FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2026 FEB 12  PM 12: 43

IN THE UNITED STATES DISTRICT COURT OFFICE OF THE CLERK
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 8:23CR86 |
| Plaintiff, | |
| v. | **PETITION IN RESPONSE TO THE PRELIMINARY ORDERS OF FORFEITURE** |
| DAVID LEIDERMANN, ET AL., | |
| Defendants. | |

COMES NOW Petitioner Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of OBX 2020-EXP1 Trust ("Wilmington" or "Petitioner"), by and through counsel, and submits this Petition in Response to the Preliminary Orders of Forfeiture (Docs. 591, 629, 682) ("Orders"), and pursuant to Fed. R. Crim. Prov. 32.2(c)(2) and 21 U.S.C. § 853(n)(1), hereby asserts its secured interest in certain property identified in the Orders and therefore, such property should be excluded from any order of forfeiture. In support of this Petition, SPS states as follows:

1.    On September 9, 2019, Borrower Gerald. V. Casale obtained a $770,000.00 loan from BM Real Estate Services, Inc. dba Priority Financial Network ("Loan"), that is secured by the real property commonly known as 51 Syar Dr., Napa, CA and legally described as follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF NAPA, COUNTY OF NAPA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 11, AS SHOWN ON MAP ENTITLED, "SILVERADO WOODLANDS", FILED OCTOBER 5, 1960 IN BOOK 7 PAGE 5 AND 6 OF MAPS.

TAX ID: 052-472-021-000

("51 Syar Dr. Property")

4939-0189-1467.1

2.    The Deed of Trust was recorded on September 13, 2019 in the Official Records of the County of Napa, as Instrument No. 2019-0018268. A true and correct copy of the recorded Deed of Trust is attached as Exhibit 1".

3.    Wilmington is the current owner of the Loan secured by the Deed of Trust.

4.    Select Portfolio Servicing, Inc. ("SPS") has been servicing the Loan since 2019 and has been granted authority through a Limited Power of Attorney to act as attorney-in-fact for the owner of the Loan, Wilmington. A true and correct copy of the Limited Power of Attorney is attached Exhibit "2".    Pursuant to that authority, SPS verifies this Petition on behalf of Wilmington.

5.    The Deed of Trust has not been reconveyed. A recent Payoff Statement, good through January 30, 2026, indicates that the total amount due under the Loan is $694,728.99. A true and correct copy of this Payoff Statement is Attached as Exhibit "3".

6.    Petitioner has a properly perfected security interest in the 51 Syar Dr. Property. Prior to these proceedings, Petitioner lacked any knowledge of the criminal actions revealed in this case.

7.    Borrower Gerald. V. Casale has filed a Petition relating to the 51 Syar Dr. Property, among other property, requesting the Court determine that his interest should not be forfeited. (Doc. 659.) In that Petition, Mr. Casale sets forth facts about his acquisition of the 51 Syar Dr. Property, and the fact that it was not related to any of the Defendants in this matter. (Doc. 659, pars. 19-22.)

8.    Petitioner claims an unsatisfied lien on the 51 Syar Dr. Property by virtue of the Deed of Trust, giving Petitioner a right, to obtain satisfaction against the aforementioned 51 Syar Dr. Property that is subject to forfeiture.

2

WHEREFORE, Petitioner prays the Court, upon consideration of the evidence and any hearing that may be had, enter an appropriate Order establishing that Petitioner has a valid enforceable interest in the 51 Syar Dr. Property.

Respectfully submitted this 12th day of February, 2026.

WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE OF OBX 2020-EXP1 TRUST, Petitioner

By: */s/ Jennifer L. Andrews*
Jennifer L. Andrews
Bar Number: 23504
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102
Telephone: (402) 346-6000
Fax: (402) 346-1148
E-mail: jennifer.andrews@kutakrock.com

3

## VERIFICATION OF PETITION

I have read the foregoing Petition in Response to Preliminary Order of Forfeiture and know its contents.

I am a _Document Control Officer_ of Select Portfolio Servicing, Inc., acting as attorney-in-fact for Petitioner Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of OBX 2020-EXP1 Trust, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

The factual matters stated in the foregoing document are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at _Salt Lake Utah_ on _February 11_, 2026.

_____
(Signature)

Sherrilyn Heflin
_____
(Printed Name)

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to those registered with the CM/ECF system for the matter and I caused the foregoing to be mailed by U.S. Mail to:

Assistant United States Attorney
Kimberly C. Bunjer
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506

*/s/ Jennifer L. Andrews*
Jennifer L. Andrews

4939-0189-1467.1



**2019-0018268**

| | |
|---|---|
| Recorded | REC FEE    87.00 |
| Official Records | |
| County of | |
| Napa | |
| JOHN TUTEUR | |
| Assessor-Recorder-Co. | |
| | EV |
| 01:05PM 13-Sep-2019 | Page 1 of 25 |

**RECORDING REQUESTED BY:**
Fidelity National Title Company

**Escrow Order No.:** FSNX-8021900096

**When Recorded Mail Document and Tax Statement To:**
BM Real Estate Services, Inc. DBA Priority Financial Network
1125 Ocean Avenue
Lakewood, NJ 08701

APN/Parcel ID(s): 052-472-021-000

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Exempt from fee per GC 27388.1 (a) (2); recorded in connection with a transfer subject to the imposition of documentary transfer tax.

Deed of Trust

**THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**(Additional recording fee applies)**

Exhibit
1

When recorded, mail to:
**BM REAL ESTATE SERVICES, INC. DBA PRIORITY FINANCIAL NETWORK**
**Attn: Final Document Department**
**1125 Ocean Avenue**
**Lakewood, NJ 08701**

———————————————— [Space Above This Line For Recording Data] ————————————————

Document Date of Instrument: **September 9, 2019**          Loan Number: **PFN19072150**

Property Address: **51 Syar Drive**
                  **Napa, CA 94558**

## DEED OF TRUST
### DOCUMENT TITLE

The undersigned declares that the document to which this page is affixed and made a part of is exempt from the fee imposed by the Building Homes & Jobs Act (SB2-2017) (GC 27388.1).

Reason for exemption:

☐ Not related to real property – GC 27388.1(a)(1)

☑ Recorded concurrently "in connection with" a transfer subject to the imposition of Documentary Transfer Tax – GC 27388.1(a)(2)

☐ Transfer of real property that is a residential dwelling to an owner-occupier – GC 27388.1(a)(2)

☐ Recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier – GC 27388.1(a)(2)

☐ Maximum $225.00 fee per transaction reached – GC 27388.1(a)(1)

_____          9.11.19
Signature                             Date

———————————————————————————————————————————————————

**THIS PAGE IS ADDED TO PROVIDE DECLARATION OF BUILDING HOMES & JOBS ACT (SB2-2017) FEE EXEMPTION**

**ADDITIONAL RECORDING FEE APPLIES**

———————————————————————————————————————————————————

Ellie Mae, Inc.                                          CADCLEX  1217
                                                         CADCLEX (CLS)

When recorded, mail to:
**BM REAL ESTATE SERVICES, INC. DBA PRIORITY FINANCIAL NETWORK**
**Attn: Final Document Department**
**1125 Ocean Avenue**
**Lakewood, NJ 08701**

Title Order No.: FSNX-8021900096-LGM
Escrow No.: FSNX-8021900096 DB
LOAN #: PFN19072150

———————————————— [Space Above This Line For Recording Data] ————————————————

# DEED OF TRUST

| MIN 1002312-0000031635-1 |
| --- |
| **MERS PHONE #: 1-888-679-6377** |

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
**(A) "Security Instrument"** means this document, which is dated **September 9, 2019,**          together with all Riders to this document.
**(B) "Borrower"** is   **GERALD V. CASALE, TRUSTEE OF THE GERALD V. CASALE TRUST DATED JUNE 9, 2004.**

Borrower's address is  **2714 4Th St., Santa Monica, CA 90405.**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is   **BM REAL ESTATE SERVICES, INC. DBA PRIORITY FINANCIAL NETWORK.**

Lender is  **a Corporation,**                          organized and existing under the laws of
**California.**                          Lender's address is   **5016 N. PARKWAY**
**CALABASAS, Ste 200, CALABASAS, CA 91302.**

**CALIFORNIA** -- Single Family -- **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     Form 3005 1/01
Ellie Mae, Inc.                          Page 1 of 13                          CAEDEDL   0219
                                                                               CAEDEDL (CLS)



**LOAN #: PFN19072150**

**(D) "Trustee"** is  **Fidelity National Title Company.**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **September 9, 2019.**      The Note states that Borrower owes Lender  **SEVEN HUNDRED SEVENTY THOUSAND AND NO/100**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* Dollars (U.S. **$770,000.00**        )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **October 1, 2049.**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☒ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | **Inter Vivos Trust Rider** |
| ☐ V.A. Rider | | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**  **Form 3005 1/01**
Ellie Mae, Inc.                                     **Page 2 of 13**                                   CAEDEDL  0219
                                                                                         CAEDEDL (CLS)



LOAN #: PFN19072150

all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County**                    [Type of Recording Jurisdiction] of **Napa**                    [Name of Recording Jurisdiction]:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #: 052-472-021-000**

which currently has the address of    **51 Syar Drive, Napa,**

[Street] [City]

California **94558**                    ("Property Address"):
      [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice

**LOAN #: PFN19072150**

from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration



LOAN #: PFN19072150

period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds·either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender. .

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
Ellie Mae, Inc.                                   Page 8 of 13                                   CAEDEDL  0219
                                                                                                CAEDEDL (CLS)

**LOAN #: PFN19072150**

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all

LOAN #: PFN19072150

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).



**LOAN #: PFN19072150**

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    **Form 3005 1/01**
Ellie Mae, Inc.                                    Page 11 of 13                                    CAEDEDL    0219
                                                                                                                    CAEDEDL (CLS)



**LOAN #: PFN19072150**

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ 9/9/19 **(Seal)**

**GERALD V. CASALE, AS TRUSTEE OF THE GERALD V. CASALE TRUST UNDER        DATE
TRUST INSTRUMENT DATED JUNE 9, 2004**

⭐ *Gerald V. Casale*

BY SIGNING BELOW, the undersigned, Settlor(s) of The Gerald V. Casale Trust under trust instrument dated June 9, 2004, acknowledges all of the terms and covenants contained in this Security Instrument and any rider(s) thereto and agrees to be bound thereby.

_____ **(SEAL) TRUST SETTLOR**

**GERALD V. CASALE**

⭐ *Gerald V. Casale*

**CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01**
Ellie Mae, Inc.                                Page 12 of 13                         CAEDEDL   0219
                                                                                     CAEDEDL (CLS)



LOAN #: PFN19072150

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of CALIFORNIA
County of ~~NAPA~~ LOS ANGELES

On SEPTEMBER 09, 2019, before me, ORIN H LOWE JR, NOTARY PUBLIC (here insert name and title of the officer), personally appeared GERALD V. CASALE, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(ies), and that by his/~~her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____

ORIN H LOWE JR.    (NOTARY)

ORIN H. LOWE JR.
Notary Public – California
Los Angeles County
Commission # 2229886
My Comm. Expires Feb 28, 2022

(SEAL)

Lender: BM REAL ESTATE SERVICES, INC. DBA PRIORITY FINANCIAL NETWORK
NMLS ID: 103098
Loan Originator: Jesse Frank Lawler
NMLS ID: 1056713

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
Ellie Mae, Inc.    Page 13 of 13    CAEDEDL  0219
CAEDEDL (CLS)

**LOAN #: PFN19072150**
**MIN: 1002312-0000031635-1**

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this **9th** day of **September, 2019** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to **BM REAL ESTATE SERVICES, INC. DBA PRIORITY FINANCIAL NETWORK, a Corporation**

(the "Lender")
of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at: **51 Syar Drive, Napa, CA 94558.**

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

**6. Occupancy.** Borrower will occupy and use the Property as Borrower's second home. Borrower will maintain exclusive control over the occupancy of the Property, including short-term rentals, and will not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person or entity any control over the occupancy or use of the Property. Borrower will keep the Property available primarily as a residence for Borrower's personal use and enjoyment for at least one year after the date of this Second Home Rider, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

MULTISTATE SECOND HOME RIDER – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890 1/01 (rev. 4/19)
Ellie Mae, Inc.                          Page 1 of 2                          F3890RLU  0519
                                                                             F3890RLU (CLS)



**LOAN #: PFN19072150**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

_____ 9/9/19 **(Seal)**

GERALD V. CASALE, AS TRUSTEE OF THE GERALD V. CASALE TRUST UNDER     **DATE**
TRUST INSTRUMENT DATED JUNE 9, 2004

\* Gerald V. Casale

BY SIGNING BELOW, the undersigned, Settlor(s) of The Gerald V. Casale Trust under trust instrument dated June 9, 2004, acknowledges all of the terms and covenants contained in this Security Instrument and any rider(s) thereto and agrees to be bound thereby.

_____ **(SEAL) TRUST SETTLOR**

GERALD V. CASALE

\* Gerald V. Casale

MULTISTATE SECOND HOME RIDER – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890 1/01 (rev. 4/19)
Ellie Mae, Inc.               Page 2 of 2              F3890RLU 0519
                                                F3890RLU (CLS)



LOAN #: PFN19072150
MIN: 1002312-0000031635-1

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In The Wall Street Journal)-Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this **9th** day of **September, 2019,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to **BM REAL ESTATE SERVICES, INC. DBA PRIORITY FINANCIAL NETWORK, a Corporation**

("Lender")
of the same date and covering the property described in the Security Instrument and located at: **51 Syar Drive, Napa, CA 94558.**

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MINIMUM AND MAXIMUM RATES BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of **5.250 %.** The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the **1st** day of **October, 2026,** and the adjustable interest rate I will pay may change on that day every **12th** month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-Fannie Mae Uniform Instrument**
**Form 3187 6/01 (rev. 6/16)**
Ellie Mae, Inc. Page 1 of 5 F3187RLU 0816
F3187RLU (CLS)



LOAN #: PFN19072150

**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in **The Wall Street Journal.** The most recent Index value available as of the date 45 days before each Change Date is called the "Current Index," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating my interest rate.
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding   **THREE AND ONE-HALF**                    percentage point(s) ( **3.500 %**                    )
(the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **10.250 %**    or less than **3.500 %.**        Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than
**TWO**                    percentage point(s) ( **2.000 %**    ) from the rate
of interest I have been paying for the preceding  **12**        month(s). My interest rate will never be greater than **10.250 % or less than the Margin.**

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-Fannie Mae Uniform Instrument**
**Form 3187 6/01 (rev. 6/16)**
Ellie Mae, Inc.                                    Page 2 of 5                              F3187RLU   0816
                                                                                            F3187RLU (CLS)



LOAN #: PFN19072150

## B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1.  Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.  When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-Fannie Mae Uniform Instrument
Form 3187 6/01 (rev. 6/16)
Ellie Mae, Inc.                    Page 3 of 5                    F3187RLU  0816
                                                                  F3187RLU (CLS)



LOAN #: PFN19072150

(b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ 9/9/19 (Seal)
GERALD V. CASALE, AS TRUSTEE OF THE GERALD V. CASALE TRUST/UNDER     DATE
TRUST INSTRUMENT DATED JUNE 9, 2004

＋ Gerald V. Casale

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-Fannie Mae Uniform Instrument
Form 3187 6/01 (rev. 6/16)
Ellie Mae, Inc.                    Page 4 of 5                    F3187RLU  0816
                                                                 F3187RLU (CLS)



LOAN #: PFN19072150

BY SIGNING BELOW, the undersigned, Settlor(s) of The Gerald V. Casale Trust under trust instrument dated June 9, 2004, acknowledges all of the terms and covenants contained in this Security Instrument and any rider(s) thereto and agrees to be bound thereby.

_____ (SEAL) TRUST SETTLOR
GERALD V. CASALE

＊ Gerald V. Casale

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-Fannie Mae Uniform Instrument
Form 3187 6/01 (rev. 6/16)
Ellie Mae, Inc.                     Page 5 of 5                     F3187RLU  0816
                                                                    F3187RLU (CLS)



LOAN #: PFN19072150

# INTER VIVOS REVOCABLE TRUST RIDER

**DEFINITIONS USED IN THIS RIDER**
(A) "Revocable Trust" means      **The Gerald V. Casale Trust**

created under trust instrument dated  **June 9, 2004**

(B) "Revocable Trust Trustee(s)" means  **Gerald V. Casale**

trustee(s) of the Revocable Trust.
(C) "Revocable Trust Settlor(s)" means  **Gerald V. Casale**

settlor(s) of the Revocable Trust.
(D) "Lender" means  **BM REAL ESTATE SERVICES, INC. DBA PRIORITY FINANCIAL NETWORK, a Corporation**

(E) "Security Instrument" means the Deed of Trust, Mortgage, or Security Deed,  and any riders thereto of the same date as this Rider given to secure the Note to the Lender of the same date and covering the Property (as defined below).
(F) "Property" means the property described in the Security Instrument and located at: **51 Syar Drive**
**Napa, CA 94558**

**THIS INTER VIVOS REVOCABLE TRUST RIDER** is made this  **9th**           day of  **September, 2019**           and is incorporated into and shall be deemed to amend and supplement the Security Instrument.

Multistate Inter Vivos Revocable Trust Rider
Ellie Mae, Inc.                                   Page 1 of 2                                   GIVTRLU  0915
                                                                                                GIVTRLU (CLS)



**LOAN #: PFN19072150**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, the Revocable Trust Trustee(s), the Revocable Trust Settlor(s) and the Lender further covenant and agree as follows:

### A. ADDITIONAL BORROWER(S)

The term "Borrower" when used in the Security Instrument shall refer to the Revocable Trust Trustee(s), the Revocable Trust Settlor(s), and the Revocable Trust, jointly and severally. Each party signing this Rider below (whether by accepting and agreeing to the terms and covenants contained herein and agreeing to be bound thereby, or both) covenants and agrees that, whether or not such party is named as "Borrower" on the first page of the Security Instrument, each covenant and agreement and undertaking of the "Borrower" in the Security Instrument shall be such party's covenant and agreement and undertaking as "Borrower" and shall be enforceable by the Lender as if such party were named as "Borrower" in the Security Instrument.

BY SIGNING BELOW, the Revocable Trust Trustee(s) accepts and agrees to the terms and covenants contained in this Inter Vivos Revocable Trust Rider.

_____  9/9/19  **(Seal)**
GERALD V. CASALE, AS TRUSTEE OF THE GERALD V. CASALE TRUST UNDER   DATE
TRUST INSTRUMENT DATED JUNE 9, 2004

*+ Gerald V. Casale*

BY SIGNING BELOW, the undersigned, Settlor(s) of The Gerald V. Casale Trust under trust instrument dated June 9, 2004, acknowledges all of the terms and covenants contained in this Security Instrument and any rider(s) thereto and agrees to be bound thereby.

_____  **(SEAL) TRUST SETTLOR**
GERALD V. CASALE

*+ Gerald V. Casale*

Multistate Inter Vivos Revocable Trust Rider
Ellie Mae, Inc.                     Page 2 of 2                     GIVTRLU  0915
                                                                    GIVTRLU (CLS)



File No: FSNX-8021900096-LGM

## EXHIBIT "A"

### Legal Description

For APN/Parcel ID(s): 052-472-021-000

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF
NAPA, COUNTY OF NAPA, STATE OF CALIFORNIA AND IS DESCRIBED AS
FOLLOWS: LOT 11, AS SHOWN ON MAP ENTITLED, "SILVERADO
WOODLANDS", FILED OCTOBER 5, 1960 IN BOOK 7 PAGE 5 AND 6 OF
MAPS.

LIMITED POWER OF ATTORNEY

Recording Requested By
and When Recorded Mail To:
Select Portfolio Servicing, Inc.
3217 S. Decker Lake Dr.
Salt Lake City, Utah 84119

E 3250543 B 7511 P 287-292
RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH   RECORDER
05/12/2020 09:45 AM
FEE $40.00 Pgs: 6
DEP RTT REC'D FOR SELECT PORTFOLIO
SERVICING INC

KNOW ALL MEN BY THESE PRESENTS, that Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee for OBX 2020-EXP1 Trust (the **"Owner Trustee"**), a Delaware statutory trust organized and existing under the laws of the State of Delaware, and having its principal place of business at, 500 Delaware Avenue, 11th Floor, Wilmington, Delaware 19801, Attention: Corporate Trust Administration – OBX 2020-EXP1 Trust, pursuant to that Servicing Agreement, dated as of February 28, 2020 (the **"Agreement"**) by and among Select Portfolio Servicing, Inc. as servicer (**"Servicer"**), Onslow Bay Financial LLC, as P&I Advancing Party, and the Owner Trustee, hereby constitutes and appoints Servicer, by and through Servicer's officers, the Owner Trustee's true and lawful Attorney-in-Fact, in the Owner Trustee's name, place and stead and for the Owner Trustee's benefit, in connection with all mortgage loans (the **"Loans"**) serviced by Servicer pursuant to the Agreement solely for the purpose of performing such acts and executing such documents in the name of the Owner Trustee necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust (the **"Mortgages"** and the **"Deeds of Trust"** respectively) and promissory notes secured thereby (the **"Mortgage Notes"**) for which the undersigned is acting as Owner Trustee for various securityholders (whether the undersigned is named therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage) and for which Select Portfolio Servicing, Inc. is acting as Servicer.

This appointment shall apply only to the following enumerated transactions and nothing herein or in the Agreement shall be construed to the contrary.

1.    The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re-recording is solely for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued; *provided* that (i) said modification or re-recording, in either instance, does not adversely affect the lien of the Mortgage or Deed of Trust as insured and (ii) otherwise conforms to the provisions of the Agreement.

2.    The subordination of the lien of a Mortgage or Deed of Trust (i) to an easement in favor of a public utility company of a government agency or unit with powers of eminent domain, or (ii) for the purposes of refinancing a Loan; this section shall include, without limitation, the execution of partial satisfactions/release, partial reconveyances or the execution or requests to trustees to accomplish same.

Exhibit
2

3.  The conveyance of the properties to the mortgage insured, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

4.  The completion of loan assumption agreements.

5.  The full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

6.  The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

7.  The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including without limitation, the assignment of the related Mortgage Note.

8.  With respect to a Mortgage or Deed of Trust, the foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or termination, cancellation or rescission of any such foreclosure, including, without limitation, any and all of the following acts:

    a)  The substitution of trustee(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;
    b)  The preparation and issuance of statements of breach or non-performance;
    c)  The preparation and filing of notices of default and/or notices of sale;
    d)  The cancellation/rescission of notices of default and/or notices of sale;
    e)  The taking of a deed in lieu of foreclosure; and
    f)  The preparation and execution of such other documents and performance of such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete said transaction in paragraphs 8.a. through 8.e. above.

9.  With respect to the sale of property acquired through a foreclosure or deed-in lieu of foreclosure, including, without limitation, the execution of the following documentation:

    a)  Listing agreements;
    b)  Purchase and sale agreements;
    c)  Grant/warranty/quit claim deeds or any other deed causing the transfer of title of the property to a party contracted to purchase same;
    d)  Escrow instructions; and
    e)  Any and all documents necessary to effect the transfer of property.

10.  The modification or amendment of escrow agreements established for repairs to the mortgaged property or reserves for replacement of personal property.

11.    The endorsement of any checks or other instruments received by the Servicer and made payable to the Owner Trustee.

12.    To pursue any deficiency, debt or other obligation, secured or unsecured, including but not limited to those arising from foreclosure or other sale, promissory note or check.

13.    To do any other act or complete any other document deemed necessary or appropriate to service and administer the Mortgage Loans in accordance with, and subject to the terms and requirements of, the Agreement.

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and thereby does ratify and confirm to all that said Attorney-in-Fact shall be effective as of February 28, 2020.

This appointment is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and it is not to be construed as a general power of attorney.

Nothing contained herein shall (i) limit in any manner any indemnification provided by Servicer to the Owner Trustee under the Agreements, or (ii) be construed to grant Servicer the power to initiate or defend any suit, litigation or proceeding in the name of the Owner Trustee except as specifically provided for herein. If Servicer receives any notice of suit, litigation of proceeding in the name of the Owner Trustee then Servicer shall promptly forward a copy of same to the Owner Trustee.

This limited power of attorney is not intended to extend the powers granted to Servicer under the Agreement or to allow the Servicer to take any action with respect to Mortgages, Deeds of Trust or Mortgage Notes not authorized by the Agreement.

The Issuer and its Owner Trustee, directors, officers, employees and agents shall be indemnified for Servicer's actions in connection with the exercise of the powers granted hereunder in accordance with the indemnification provided in the Agreement. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Agreement or the earlier resignation or removal of the Owner Trustee under the Agreement.

This limited power of attorney and any subsequent limited power of attorney given to Servicer shall terminate on the date that is the earlier of (i) until revoked in writing by the undersigned, provided, that so long as none of the following events below have occurred or are continuing, the Issuer shall execute and deliver a replacement power of attorney upon the request of SPS:

i.     the termination of the Servicer as the servicer with respect to the Loans serviced by SPS under the Agreement,

ii.    the transfer of servicing from Servicer to another servicer with respect to the Loans serviced by the Servicer under the Agreement,

iii.    the appointment of a receiver or conservator with respect to the business of
         Servicer, or

iv.     the filing of a voluntary or involuntary petition of bankruptcy by Servicer or any
         of its creditors..
         v.

If any provision of this Limited Power of Attorney shall be held invalid, illegal or unenforceable, the validity, legality or enforceability of the other provisions hereof shall not be affected thereby. This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York, without regard to conflicts of law principles of such state.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney; and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

Any third party may rely upon a copy of this Limited Power of Attorney, to the same extent as if it were an original, and shall be entitled to rely on a writing signed by the Servicer to establish conclusively the identity of a particular right, power, capacity, asset, liability, obligation, property, loan or commitment of Servicer for all purposes of this Limited Power of Attorney.

The Issuer authorizes Servicer, by and through any of its directors or officers, or any other employee who is duly authorized by Servicer to certify, deliver and/or record copies and originals of this Limited Power of Attorney.

The Owner Trustee will not be responsible for inspection of any items being executed pursuant to this Limited Power of Attorney and as such, is relying upon the Servicer to undertake whatever procedures may be necessary to confirm the accuracy of such items.

It is expressly understood and agreed by the Attorney-in-Fact and any person relying on this Power of Attorney that (a) the Agreement and this Limited Power of Attorney is executed and delivered by Wilmington Savings Fund Society, FSB, not individually or personally, but solely as Owner Trustee, in the exercise of the powers and authority conferred and vested in it, (b) each of the representations, undertakings and agreements made in the Agreement or in this Limited Power of Attorney on the part of the Issuer or Owner Trustee is made and intended not as personal representations, undertakings and agreements by Wilmington Savings Fund Society, FSB but is made and intended for the purpose of binding only the Issuer, (c) nothing in the Agreement or herein contained shall be construed as creating any liability on Wilmington Savings Fund Society, FSB, individually or personally, to perform any covenant either expressed or implied contained in the Agreement or herein of the Owner Trustee or the Issuer, all such liability, if any, being expressly waived by the Attorney-in-Fact and any person relying on this Limited Power of Attorney and by any person claiming by, through or under the Attorney-in- Fact or such person, (d) Wilmington Savings Fund Society, FSB has made no investigation as to the accuracy or completeness of any representations and warranties made in the Agreement or herein and (e) under no circumstances shall Wilmington Savings Fund Society, FSB be personally liable for the payment of any indebtedness or expenses of the Owner Trustee or Issuer or be liable for the breach or failure of any obligation, representation, warranty or covenant made

or undertaken by the Owner Trustee or Issuer under the Agreement, this Limited Power of Attorney or any other related documents.

Notwithstanding anything herein to the contrary, this Limited Power of Attorney does not, and is not intended to, and will not be construed to, grant any authority to the Attorney-in-Fact to (i) expand, increase, incur, or otherwise impose any duties, liabilities or obligations of or on the Owner Trustee, as trustee or in its individual capacity, or (ii) provide any guaranty, indemnity or property of the Owner Trustee, as trustee or in its individual capacity, for any reason whatsoever.

[Signature page follows]

IN WITNESS WHEREOF, the Owner Trustee has caused this instrument to be signed in its name and behalf by a duly elected and authorized signatory this 8th day of April 2020.

Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee for OBX 2020-EXP1 Trust

Name: Shaheen Mohajer
Title: Vice President

State of Delaware
County of New Castle

On April 8th 2020, before me, the undersigned, a Notary Public in and for said state, personally appeared Shaheen Mohajer of Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as the Owner Trustee of OBX 2020-EXP1 Trust, personally known to me to the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity and that by his/her signature on the instrument the entity upon behalf of which the person acted and executed the instrument.

WITNESS by hand and official seal.
(SEAL)

Notary Public, State of Delaware

JAMES F. CASTERIOTO
Notary Public
State of Delaware
My Commission Expires on Nov 7, 2022

Acknowledged and Agreed By:
Select Portfolio Servicing, Inc.

By:
Name:
Title:        Sara Montoya
        Vice President, Senior Counsel

Page **6** of **6**

 **SPS** | SELECT *Portfolio* SERVICING, *inc.*

 Sign up for paperless delivery at www.spsservicing.com

Paperless

**PAYOFF STATEMENT**
Date: January 15, 2026
Requested By:

    SPS LEGAL

    SHARIYU PRESTON

Account Number:  0027391150
Payment Due Date: February 01, 2026

**This Statement expires on:**
**January 30, 2026**

Customer Name/Property Address:

    GERALD V CASALE

    51 SYAR DRIVE
    NAPA, CA 94558

**THE FOLLOWING AMOUNTS ARE SUBJECT TO FINAL VERIFICATION**
**BASED ON THE RECEIPT OF FUNDS**

| ITEMIZATION | | |
|---|---|---|
| Unpaid Principal Balance | $ | 691,798.33 |
| Interest Calculated to January 30, 2026 | $ | 2,885.66 |
| Release Preparation Fees | $ | 45.00 |
| | | |
| **Total Amounts Due Under your Note and Mortgage** | **$** | **694,728.99** |
| Per Diem Daily Interest | | $ 99.51 |
| **TOTAL AMOUNT DUE** | **$** | **694,728.99** |

**Exhibit 3**

XP111





**IMPORTANT INFORMATION REGARDING THE ACCOUNT PAYOFF:**

1) **Clearance of Funds:** The Payoff Statement assumes that payments made on your account have cleared your financial institution. If a payment you made is returned, you are still responsible to pay that amount, even though we accept the amount of your payoff. Payments received within thirty (30) days of the payoff application are subject to clearance by your financial institution.

2) **Final Verification:** The amounts set forth in this Payoff Statement are subject to final verification.

3) **Expiration:** This Payoff Statement expires and is void after January 30, 2026. You must obtain an updated WRITTEN statement from us if you want to pay off your account after the expiration date. Please allow up to five (5) business days for us to provide you with an updated Payoff Statement (unless state law requires a shorter timeframe).

4) **Prepayment Penalty:** If your mortgage documents indicate a prepayment fee on your account, it is included as part of the total amounts due for payoff. If the prepayment fee should be waived, supporting documentation (e.g., final HUD1, grant deed, warranty deed, prepayment rider) must be faxed to (801) 269-4269 prior to the receipt of your payoff funds. Upon receipt, the documents will be reviewed for final determination of waiving the prepayment fee. If you have any questions about the prepayment fee, please contact us at (800) 258-8602.

5) **Foreclosure / Bankruptcy:** If the account is currently subject to a pending foreclosure or bankruptcy action, the attorney fees and costs for services rendered that have been incurred with respect to this pending action have been included in the outstanding amounts due. Legal actions may continue after the date of this letter, and if so, will result in additional attorney fees and costs. An estimate of those amounts to be incurred between the date of this quote and the good through date are included. In the event that upon completion of the related legal work the actual legal fees and costs charged by the attorney to SPS are less than the estimates provided by the attorney in this quote, SPS will apply such overage to any other amounts due and owing. If there are no amounts due, SPS will refund such overage directly to the customer.

6) **Non-Sufficient Funds:** If the amounts received are not sufficient to pay the account in full, we will return the payoff funds. Interest will continue to accrue at the daily (per diem) amount shown on the Payoff Statement and late charges may be incurred until sufficient funds are received to pay the account in full. To avoid non-sufficient funds, please confirm the actual payoff amount by calling (800) 258-8602. A satisfaction/release of mortgage will not be recorded until all amounts due under your mortgage documents are received, unless applicable law requires otherwise.

7) **Scheduled Payments:** Do not cancel or stop payment on any of your regularly scheduled monthly payments. **Issuance of this Payoff Statement does not suspend your obligation to make your monthly payments under your mortgage documents.** You must continue to make your monthly

XP111

 

payments, when due, up until the time your account is paid in full. If the last regular monthly payment you sent to us is returned for insufficient funds, is dishonored due to a stop payment order, or payment is not made for any other reason, the amount required to payoff your account may be higher than shown in this Payoff Statement.

8) **Remittance of Funds:** Payoff amounts must be remitted in U.S. Dollars by money wire, certified or cashier's check, title company check or an attorney's trustee check. No personal or unofficial checks will be accepted. A copy of the Payoff Statement must accompany your payoff check. No deliveries should be made on Saturday, Sunday or legal holidays. Payoff funds received after 12 p.m. Noon Eastern Time will be processed the following business day.

**PLEASE REMIT FUNDS TO THE FOLLOWING:**

| Wiring Instructions | Mailing Instructions |
|---|---|
| Select Portfolio Servicing, Inc. | Select Portfolio Servicing, Inc. |
| Salt Lake City, Utah | Attn: PAYOFF DEPARTMENT |
| Attn: PAYOFF DEPARTMENT | PO BOX 65450 |
| Routing/ABA # 021000021 | Salt Lake City, UT 84165 |
| Account # 900900308 | |
| Wire Retaining | Overnight Address: |
| For Credit to: 0027391150 | 3217 S. Decker Lake Dr. |
| Name: GERALD CASALE | Salt Lake City, UT 84119 |

9) **Regularly Scheduled Payments:** If you fail to make your regularly scheduled monthly mortgage payments within the timeframe stated on your monthly statement, the late charge disclosed on your monthly statement will be added to the payoff total. If your monthly payment is received, but is returned unpaid by your bank, a fee will be added to the payoff total to the extent permitted by applicable law.

10) **Automated Payments:** If your monthly payments are automatically deducted from your banking account, these payments will continue to be withdrawn until the account is paid in full, or unless we receive verbal or written cancellation instructions in our office no later than three (3) business days prior to the payment due date.

11) **Per Diem Daily Interest:** The Per Diem Daily Interest is the daily interest that will accrue after the effective date of this Payoff Statement, with the assumption that monthly payments are made as anticipated under the Note and Security Instrument. If payments are not made as anticipated under the Note and Security Instrument, the Per Diem Daily Interest may change, and may be higher or lower than stated above. If you have any questions regarding the outstanding amounts or the Per Diem Daily Interest outstanding, please contact Select Portfolio Servicing, Inc. for an updated amount.

12) **Escrow Account:** If you have an escrow account with us, issuance of this Payoff Statement does not alter our responsibility to pay taxes and insurance from the escrow account. If a bill for these items is received prior to the receipt of payoff funds, we will pay them from the escrow account. Select

XP111

 

**SPS** | SELECT *Portfolio* SERVICING, inc.

Sign up for paperless delivery
at www.spservicing.com

Paperless

Portfolio Servicing, Inc. is not responsible for private agreements between the mortgagor and a third party with regard to the disbursement of escrow funds. If funds have accumulated in the escrow account, and if we have been required to pay interest on such funds as provided by state law, interest will be paid to the date the escrow closes. Any deficiencies in the escrow account will be collected at payoff. Any excess funds in the escrow account will be refunded approximately fourteen (14) business days after the payoff is complete. If lender placed insurance has been charged to the escrow account prior to payoff, the full amount will be required to pay off the account. If appropriate evidence of insurance is received, the applicable refund will be issued to the mortgagee of record within four to six weeks. Any escrow balance will be refunded after payoff, provided the last payment applied to the account has cleared the institution on which it was drawn.

13) **Forwarding Address:** Please provide the proper forwarding address to ensure receipt of applicable escrow refunds, cancelled documents, and annual tax/interest statements. If a forwarding address is not provided, all correspondence will be mailed to the customer's last known address.

14) **Release/Satisfaction of Mortgage:** Upon receipt of the timely payment of the required payoff amount, SPS will prepare and send for recording a lien release in full satisfaction of the mortgage on the above referenced property in accordance with timelines established by state law, foregoing all rights to personal liability or deficiency judgment.

15) **Questions?** If you have any questions, please contact our Customer Service Department. Our toll-free number is (800) 258-8602, and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero (800) 831-0118 y seleccione/marque la opción 2.**

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**